UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN K., <br><br>                        Plaintiff, <br><br> v. <br><br> ANDREW H. SAUL, Commissioner of Social Security, <br><br>                        Defendant. | Case No.: 19-cv-2228-DEB <br><br> **ORDER:** <br><br> **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 17], AND** <br><br> **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19]** |

### I.      INTRODUCTION

On November 22, 2019, Plaintiff Nathan K. filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits. Dkt. No. 1. The parties filed Cross-Motions for Summary Judgment and Plaintiff filed a Reply. Dkt. Nos. 17, 19, 22. For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

//

//

## II. PROCEDURAL BACKGROUND

On April 15, 2015, Plaintiff filed an application for disability insurance benefits alleging disability beginning on April 28, 2014. AR 189-190.[1] The Commissioner denied Plaintiff's claim initially on July 7, 2015 (AR 71-76), and on reconsideration on September 15, 2015 (AR 78-83). At Plaintiff's request, the ALJ held a hearing on December 8, 2017 (AR 42-47), but, because Plaintiff's counsel had recently withdrawn, Plaintiff did not testify until the second hearing on July 31, 2018 (AR 48-69).

On August 10, 2018, the ALJ issued a decision denying Plaintiff's claim. AR 22-41. On May 31, 2019, the ALJ's decision became final under 42 U.S.C. § 405(h) when the Appeals Council denied Plaintiff's request for review. AR 11-16. Plaintiff then filed the present Complaint. Dkt. No. 1.

## III. PLAINTIFF'S STATEMENTS

Plaintiff alleges disability due to long-term Lyme Disease.[2] AR 86. He was forty years old when he testified at the July 31, 2018 hearing. AR 51. He has a Master of Business Administration. *Id.* Plaintiff held the following full-time jobs between 2003 and 2014:

---

[1] "AR" refers to the Administrative Record lodged on March 10, 2020. Dkt. No. 10. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

[2] "Lyme disease is the most common vector-borne disease in the United States. Lyme disease is caused by the bacterium Borrelia burgdorferi and rarely, Borrelia mayonii. It is transmitted to humans through the bite of infected blacklegged ticks. Typical symptoms include fever, headache, fatigue, and a characteristic skin rash called erythema migrans. If left untreated, infection can spread to joints, the heart, and the nervous system. Lyme disease is diagnosed based on symptoms, physical findings (e.g., rash), and the possibility of exposure to infected ticks. Laboratory testing is helpful if used correctly and performed with validated methods. Most cases of Lyme disease can be treated successfully with a few weeks of antibiotics." Centers for Disease Control and Prevention, https://www.cdc.gov/lyme/index.html (last visited March 22, 2021)

account associate for Doner Advertising (2003-04); cell phone test technician for Kelly Tech Services (2005-06); market research analyst for Progression Research (2007); account executive for Western Wats Center (2008-09); and data analyst for Extend Health (2009-14). AR 51-53. Plaintiff stopped working in 2014 due to his health issues. AR 53.

Plaintiff testified that he has lower back pain and "severe inflammation body-wide internally and externally," which he described as "burning, itching, stinging, stabbing, squeezing, [and] clinching." AR 54, 63. These symptoms have persisted for four and a half years. AR 63. He also has "severe heart pain," which he described as "stabbing." AR 55.

Plaintiff wakes up feeling fatigued and stiff, with pain in his lower back and throughout the rest of his body. AR 58. Even minor activity causes him to feel "tired and in more pain." AR 58-59. Attending doctor's appointments exhausts him and he needs several days of rest to recuperate after each appointment. AR 59-60. His condition is "all-consuming," and he lacks energy for hobbies or recreational activities. AR 61. His wife "handl[es] pretty much everything." AR 60.

Plaintiff has experienced fatigue for several years but reported that it was more severe in the two months prior to the hearing due to a reaction to Itraconazole. AR 57-58, 64. Plaintiff reported that he has irregular sleep patterns, "feel[s] like. . . a hazard[,]" is unable to concentrate or focus, and is forgetful, clumsy, and disoriented. AR 60. He leaves himself reminders to pay bills and has missed doctor's appointments and picked up his son late from day care due to his forgetfulness. AR 62.

He attempted to obtain relief through homeopathic remedies, but he stopped taking medications completely about one and a half months prior to the hearing because his body no longer tolerates them. AR 64. He uses natural therapies including massage, cupping, acupuncture, and sauna detoxes. AR 64-65. He also uses coffee and salt water enemas one to three times each week, and he previously used them several times a day. AR 65.

Plaintiff has neither received regular care by a psychologist or psychiatrist nor taken any medications for a mental health condition. AR 57.

## IV.   SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; AR 26-27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability. AR 27.

At step two, the ALJ found that Plaintiff had the following severe impairments: spondylolisthesis of the lumbar spine; non-specific myositis, myalgias and arthropathies; and fatigue. AR 27-28. He also found that Plaintiff had non-severe depression and a mild neurocognitive disorder. AR 28.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled those listed in the Commissioner's Listing of Impairments. AR 28-29.

Before proceeding to step four, the ALJ determined that Plaintiff had the "residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except the [Plaintiff could] lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours of an eight-hour workday; sit for six hours of an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, scaffolds or ropes; and should avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery." AR 29. In reaching this conclusion, the ALJ gave partial weight to Plaintiff's treating physician Andrew Petersen's opinions and no weight to treating physicians Raphael Stricker or Mary Ackerley's opinions or those of Christopher Snell, Ph.D. AR 31-33. The ALJ also found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible. AR 30–31.

At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as a data communications analyst, market research analyst, account executive, and electronics tester. AR 33-34. The ALJ, therefore, concluded that Plaintiff was not disabled and did not proceed to step five. AR 34.

## V. ISSUES IN DISPUTE

Plaintiff raises multiple issues as grounds for reversal and remand:

1. Whether the ALJ erred at step two by finding that Lyme disease was not a severe impairment (Dkt. No. 17 at 15-17);

2. Whether the ALJ erred by discounting or rejecting the opinions of Plaintiff's treating physicians (*id.* at 17-23);

3. Whether the ALJ erred by rejecting Plaintiff's subjective symptom testimony as not credible (*id.* at 23-25); and

4. Whether the ALJ's RFC determination was adequately supported by a medical opinion. *Id.* at 23.

## VI. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id*.

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## VII. DISCUSSION

### A. Lyme Disease as a Severe Impairment

Plaintiff argues the ALJ erred at step two by not identifying Lyme disease as a severe impairment. Dkt. No. 17 at 15-17. Plaintiff argues that the ALJ's finding is inconsistent with objective medical evidence in the record. *Id*. The Court finds no error.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Court reviews an ALJ's step-two finding for substantial evidence. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

A disability finding requires that the claimant have a "severe impairment," which the regulations explain is an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520(c). The claimant must prove the impairment by providing relevant evidence. *See* 20 C.F.R. § 404.1512(a). Objective medical evidence includes "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1), 404.1502(f). An impairment is not severe if clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb*, 433 F.3d at 687; *Smolen*, 80 F.3d at 1290.

Plaintiff contends the following objective medical evidence supports a Lyme disease diagnosis: a positive IgM Western Blot and Babesia duncani test results, a diagnosis that is predicated on these test results, and medical treatment notes referencing these test results as "partial positive results." Dkt. No. 17 at 15 (citing AR 278, 289, 366-67, 369). The ALJ considered these test results but determined they were not objective evidence of Lyme disease because they were not Food and Drug Administration (FDA) approved. AR 30 (citing AR 326, 359, 367, 369, 371, 404, 433, 496, 702, 796, 831, 1215, 1244). The ALJ also rejected the tests because they were not intended for diagnostic use or as conclusive evidence of the presence or absence of malignant disease. *Id.*

Plaintiff argues that the ALJ erred because courts have regarded a positive IgM Western blot test result as "objective medical evidence" of Lyme disease. *See* Dkt. No. 17 at 15-17 (citing *Lujan v. Berryhill*, 298 F. Supp. 3d 1323, 1329-30 (E.D. Cal. 2018); *Moores v. Colvin*, 173 F. Supp. 3d 989, 997 (E.D. Cal. 2016); and *Morgan v. Colvin*, 12-cv-01235-AA, 2013 WL 6074119, at *11 (D. Or. Nov. 13, 2013)). But at least one other court has evaluated IgM Western blot test results in a broader context. *See Cannon v. Soc.*

*Sec. Admin.*, 15-cv-05014-NC, 2017 WL 605076, at *2 (N.D. Cal. Feb. 15. 2017) (affirming the ALJ's finding that there was no objective medical evidence to establish Lyme disease at step two where: the plaintiff had both positive and negative test results; there was no consistency in the medical opinions about the objective bases for diagnosing Lyme disease; and the testing methods used were not FDA approved).

Here, as in *Cannon*, most of Plaintiff's tests for Lyme disease resulted in negative or inconclusive findings. Plaintiff's August 18, 2014 Lyme IgM Western Blot test had positive results at band 31 and 41, but indeterminate findings. AR 310, 327. Other tests were negative. AR 343 (iSpot Lyme test); AR 395 (Lyme (B. burgdorferi) PCR); AR 396 (Q Fever Phase); and AR 397 (brucella antibody IgM). Additionally, as the ALJ noted, the testing methodologies used for Plaintiff's Lyme disease diagnosis were neither FDA approved nor intended for diagnostic use. AR 30 (citing AR 326, 359, 367, 369, 371, 404, 433, 496, 702, 796, 831, 1215, 1244).

The record here also contains no consistent or objective basis for supporting a Lyme disease diagnosis. In addition to the multiple negative and inconclusive tests, numerous physicians who examined Plaintiff questioned his Lyme disease diagnosis and the testing procedures upon which it was based. *See* AR 1391-92 (Dr. Mansour, Scripps Health, December 21, 2017: documenting normal examination findings and noting "no evidence of any acute illness" and that test results for a possible parasite infection or systemic symptom were "unremarkable"); AR 1442 (Dr. Noord, Scripps Health, April 13, 2018: noting "unclear validity" of Lyme Western blot testing); AR 1656 (Dr. Reidl, U.C. San Diego Health, March 4, 2018: "[Patient's] clinical history is not strongly suggestive of any specific described immunodeficiency and his previously reported testing appears to largely consist of non-traditional and non-validated assays so it is very difficult to determine any specific diagnosis. . . ."); AR 1150 (Dr. Ander, December 14, 2017: "I don't suspect any significant (central nervous system) disease . . . . It is possible that there is a psychosomatic contribution in part or in total that may explain his symptoms."); AR 1353 (Dr. Modena, Scripps Health, December 14, 2017: "[Patient] has an extensive array of concerns,

symptoms, and diagnoses without clear unifying diagnosis or clue. . . . I am re-assured by normal examination, no major hospitalization records, normal CBC, normal CMP, and no major symptoms of major illness. . . . [A]lthough patient is unwilling to discuss, [there] is the possibility of psychiatric disease in someone with a family history of mental illness, and maintains a poor, slightly flat affect.").

Moreover, the state agency medical consultants, Ralph McKay, M.D., and David O. Peterson, M.D., both concluded that Plaintiff did not have a severe impairment after reviewing Plaintiff's test results and other medical records. AR 71-76, 79-82. Dr. McKay opined that Lyme disease "does not seem to limit functional status" (AR 74), and Dr. Peterson likewise found that Plaintiff's "exams are normal and there is no evidence of a severe (medically determinable impairment) that would reasonably cause alleged limitations/symptoms" (AR 81).

Furthermore, Plaintiff's Scripps Health and U.C. Irvine Health medical records (including an endoscopy, colonoscopy, ultrasound, CT scan, and multiple laboratory tests) showed no evidence of any acute illness. *See* AR 1353 (noting normal examination, normal testing, no symptoms of major illness, no evidence of mold infection or mold allergy); AR 1391 (normal examination and review of testing showed "no evidence of any acute illness that can be documented"); AR 1411-12 (normal examination, "outside testing" results unclear); AR 1442-43 (review of testing showed no evidence of muscle disease and neuropathy); AR 1772 (no evidence of a neuromuscular disorder).

Finally, any error in failing to identify Lyme disease as a severe impairment at step two is harmless because the ALJ included the symptoms associated with Lyme disease (non-specific myositis, myalgias, arthropathies, and fatigue) as severe impairments (AR 27), and considered all of the symptoms in the RFC (AR 29-33). *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (An error is harmless if it is "clear from the record that [the] error was inconsequential to the ultimate nondisability determination.") (internal quotation omitted); *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir. 2018) ("The ALJ's failure to list fibromyalgia as a severe impairment at step two is at most

harmless error. . . . Even without considering [plaintiff's] fibromyalgia a severe impairment, the ALJ found that other of [plaintiff's] ailments constituted serious impairments, and consequently. . . moved on to the subsequent evaluation steps.").

### B. Rejection of Plaintiff's Treating Physicians' Opinions

Plaintiff also challenges the ALJ's decision to discount and reject opinions rendered by professionals whom Plaintiff identifies as his treating physicians. Dkt. No. 17 at 17-23. The opinions in question were rendered by Dr. Raphael Stricker, Dr. Andrew Peterson, Christopher R. Snell, Ph.D., and Dr. Mary Ackerley.

Where, as here, "a treating . . . doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Applying this standard, the Court finds no error regarding the ALJ's treatment of the opinions at issue.

**Raphael Stricker, M.D.**

Raphael Stricker, M.D. is an internal medicine specialist who examined Plaintiff several times in 2014 and reviewed numerous lab reports. AR 361-451. On November 12, 2014, Dr. Stricker opined that Plaintiff was "completely disabled and cannot perform his duties at work" due to joint pain, muscle aches, severe fatigue, memory loss, cognitive problems, chest pain, and other pain resulting from "disabling musculoskeletal and neurological symptoms of Lyme disease, Babesiosis and Ehrlichiosis." AR 1116. As the ALJ correctly observed, Dr. Stricker opined on the ultimate disability issue without providing supporting information regarding Plaintiff's work-related functional limitations. AR 32. Because opinions on the ultimate issue (i.e., whether the claimant is disabled) are reserved for the Commissioner, the ALJ's rejection of Dr. Stricker's conclusory opinion was proper. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), *as amended* (June 22, 1999) (affirming ALJ's rejection of opinion that was "conclusory and unsubstantiated

by the relevant medical documentation"); *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that [claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine [the claimant is] disabled.").

**Andrew Petersen, D. O.**

Andrew Petersen, D.O. treated Plaintiff for hyperthyroidism from July 31, 2014 to March 25, 2015. AR 293-359. In his March 21, 2015 Attending Physician's Report, Dr. Petersen opined that Plaintiff suffers from chronic fatigue syndrome, fibromyalgia, neuropathy, chronic pain, irritable bowel syndrome, heavy metal toxicity, depression, and anxiety. AR 1087-88. On May 6, 2015, he added a diagnosis of long-term Lyme disease. AR 1118.

Regarding specific impairments, Dr. Petersen opined that Plaintiff could sit for about thirty minutes but not more than one hour (AR 1087-88); stand for two hours (AR 1088); walk for ten minutes (*id.*); and lift or carry about thirty pounds for less than two minutes. *Id*. He also stated Plaintiff could not bend or stoop without pain, had impaired manual dexterity, and that Plaintiff's impairments were permanent. *Id*.

In his March 21, 2015 report, Dr. Petersen offered two conflicting opinions regarding Plaintiff's ability to work: (1) Plaintiff's physical impairments rendered him capable of doing only light or sedentary work (*id.*); and (2) Plaintiff is incapable of performing any work on either a limited or full-time basis (AR 1089). On May 6, 2015, Dr. Peterson opined that Plaintiff was "currently disabled because of the severity of his symptoms." AR 1118.

The ALJ rejected Dr. Petersen's statements that Plaintiff was "currently disabled." AR 32. As discussed above, this ultimate issue is reserved for the Commissioner.

The ALJ gave partial weight to the remainder of Dr. Petersen's opinions, but found that Dr. Petersen inconsistently opined that Plaintiff both was capable of light or sedentary work and could not work at all. AR 31 (citing AR 1088, 1089).  The ALJ also noted that Dr. Peterson inconsistently opined that Plaintiff could not walk for more than ten minutes but could stand for two hours. *Id*. (citing AR 1088). These inconsistencies are specific and

legitimate reasons for the ALJ to discount Dr. Petersen's opinions. *See Shavin v. Comm'r Soc. Sec. Admin.*, 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results [or] reports . . . .") (internal citation omitted).

Moreover, and as the ALJ also found, Dr. Petersen's conclusions are not supported by the medical record. AR 31. The ALJ identified numerous normal physical examinations and test results in the record that conflicted with Dr. Petersen's opinions. *Id*. (citing AR 289-90 (Dr. Johnson, Advanced Wound Care Systems of America, January 25, 2015: Although Plaintiff complained of dizziness, fainting, chest, abdominal, joint, and spinal pain, he appeared awake, well developed, well groomed, and well nourished, and exam findings were normal for his head, eyes, ears, nose and throat, neck, and extremities, and his respiratory, cardiovascular, gastrointestinal, lymphatic, dermatologic, and neurological systems.); AR 441-42 (Dr. Gin, U.C. San Diego Health System, May 12, 2014: normal findings except for minor gastrointestinal and urological issues); AR 457-58, 752-53 (Dr. Schmultz, Integrative Medica, April 13, 2015 and May 6, 2015: treatment notes documenting no apparent distress, stable respirations, normal gait, appropriate judgment, appropriate orientation, extremities moved freely and with purpose); AR 752-53; AR 1003-04, 1001-02, 999-1000 (Dr. Novak, Novak Medical Group, June 26, 2016, August 31, 2016, and September 20, 2016: treatment notes documenting that Plaintiff was not in acute distress and examination of his head, eyes, ears, mouth, throat, neck and thyroid, skin, heart, lungs, abdomen, musculoskeletal system, extremities, and neurological system yielded normal findings); AR 982-83, 958-59, 898-99, 882-83, 880-81, 878-79, 876-77, 874-75, 872-73, 870-71, 868-69, 866-67, 864-65, 862-63, 860-61, 858-59, 855-57, 853-54, 851-52, 849-50, 846-48 (Dr. Novak's notes from twenty-one examinations between October 20, 2016 and October 11, 2017: documenting that Plaintiff was not in acute distress and had normal findings for his heart, lungs, abdomen, and extremities); AR 1134-36 (Dr. Learn, Arch Health Medical Group, December 6, 2017: normal findings during review of Plaintiff's constitutional, ENMT (ears, nose, mouth and throat), eyes,

respiratory, cardio, gastrointestinal, urologic, endocrine, psychological and integumentary systems, but noting fatigue and nasal congestion and discharge); AR 1148-53 (Dr. Ander, December 14, 2017 and December 20, 2017: documenting intact memory and cognition, normal muscle tone and bulk, normal gait, normal coordination, and supple neck, and writing, "I don't suspect any significant (central nervous system) disease . . . . It is possible that there is a psychosomatic contribution in part or in total that may explain [Plaintiff's] symptoms."); AR 1305-06 (Dr. Berenter, May 11, 2018: documenting normal muscle strength, ranges of motion, and gait); AR 1332 (Dr. Mansour, Scripps Health, December 7, 2017: documenting normal findings for constitutional, head, mouth and throat, eye, neck, cardiovascular, pulmonary, abdominal, musculoskeletal, lymphatic, neurological, and psychiatric systems; unremarkable endoscopy and colonoscopy results; and "no significant symptoms that would warrant any further evaluation or workup"); AR 1353 (Dr. Modena, Scripps Health, December 14, 2017: "[Patient] has an extensive array of concerns and diagnoses without clear unifying diagnosis or clue. . . . I am re-assured by normal examination, no major hospitalization records, normal CBC, normal CMP, and no major symptoms of major illness. . . . [A]lthough patient is unwilling to discuss, [there] is the possibility of psychiatric disease in someone with a family history of mental illness," and noting that Plaintiff "maintains a poor, slightly flat affect."); AR 1391-92 (Dr. Mansour, Scripps Health, December 21, 2017: normal examination findings and noting that test results for a possible parasite infection or systemic symptom were "unremarkable"); AR 1411-12 (Dr. Mansour, Scripps Health, February 23, 2018: normal examination findings except some abdominal tenderness with palpitation); AR 1427 (Dr. Simon, Scripps Health, April 3, 2018: "Nathan provided extensive past medical records to me. Everything I saw was completely normal. This included the presence of mycotoxins but not at what I would interpret as significant levels. He also had positive IgG and IgG titers. . . but not what I interpret as significant. He then showed me normal labs with his description of them being abnormal."); AR 1439-42 (Dr. Van Noord, Scripps Health, April 13, 2018: noting "unclear validity" of Lyme Western blot testing and

documenting normal examination findings); AR 1770-71 (Dr. Kak, U.C. Irvine Health, April 19, 2019: normal examination findings)).

These numerous examinations and test results further support the ALJ's decision to discount Dr. Petersen's opinions regarding Plaintiff's exertional limits. *Magallanes*, 881 F.2d at 751-55 (finding the ALJ properly rejected a treating physician's opinion that conflicted with other examining physicians' reports, laboratory test results, and the consulting physician's opinions).

Finally, in rejecting Dr. Petersen's opinions, the ALJ also properly relied upon the state medical consultants' opinions that Plaintiff had no workplace limitations. AR 31-32 (citing AR 72-75, 81-82). The ALJ specifically found the state agency consultants' opinions were reasonably consistent with the medical record, including the numerous test results and generally unremarkable physical examinations. AR 32 (citing AR 289-90, 326, 359, 367, 369, 371, 404, 433, 442, 457-58, 496, 702, 752, 796, 831, 844-967, 1003-04, 1135-36, 1149, 1152, 1215, 1244, 1305-06, 1351-53, 1391-92, 1412, 1427, 1441-43, 1469-41, 1770-71, 1772). The Court agrees that the state agency consultants' opinions are more consistent with the record and, therefore, provided an additional basis for the ALJ to reject Dr. Petersen's assessment. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

**Christopher R. Snell, Ph.D.**

Christopher R. Snell, Ph.D. conducted a two-day cardiopulmonary exercise test ("CPET") on Plaintiff in May 2018. AR 1818-47. The CPET showed below normal metabolic responses, workload, cardiovascular responses, and recovery time, but normal respiratory response. AR 1820. From this, Mr. Snell concluded that Plaintiff's oxygen consumption was too poor for him to perform any work, even sedentary. AR 1823.

The parties analyze the ALJ's rejection of Mr. Snell's opinion under the treating physician standard, which is not the proper standard. Mr. Snell has a Ph.D. in Exercise and

Movement Science (AR 1840), which is not one of the "acceptable medical source[s]" listed in 20 C.F.R. §§ 404.1502(a) and 416.902(a). Although the ALJ was required to consider Mr. Snell's findings, the ALJ could discount them for "germane" reasons supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ gave Mr. Snell's opinion no weight because he performed testing for two days only and was not qualified to render a medical opinion. AR 33. The ALJ also noted that, although Mr. Snell concluded "the claimant exhibited anomalies so severe that it precluded all work," none of Plaintiff's clinical or treatment records from established medical facilities, such as University of California, San Diego Medical Center, or Scripps Health, corroborated Mr. Snell's opinion. *Id*. As the ALJ noted, one would expect to see significant work-up and treatment of a heart condition that is so severe that it precludes all work, but Plaintiff's medical records are devoid of any such treatment. *Id*. Supporting the ALJ's conclusion, the Court has reviewed the approximately 1,600-page medical record, and nothing in it reflects any major cardiac concerns that caused any of the multiple doctors who examined Plaintiff to order a heart study. Additionally, although the CPET showed evidence of reduced oxygen consumption, it is inconsistent with other medical evidence in the record, including multiple normal physical examinations recording normal oxygen saturation levels. AR 846, 849, 851, 853, 855, 876, 894, 926, 932, 934, 936.

In sum, the ALJ gave germane reasons supported by substantial evidence for rejecting Mr. Snell's opinion. For these same reasons, the ALJ's rejection of Mr. Snell's opinion was proper even under the higher "treating physician" standard. The Court finds no error.

**Mary Ackerley, M.D**.

Plaintiff consulted with Mary Ackerley, M.D., a psychiatrist and integrative physician, on eight occasions beginning May 17, 2017. AR 809-36, 1873. Her opinions appear in a letter dated July 22, 2018 (AR 1873-76) and a Medical Information Questionnaire dated July 26, 2018 (AR 1877-78). She opined that Plaintiff had chronic fatigue syndrome with post exertional malaise "due to a multi-symptom, multi-system

immunological disturbance." AR 1874-75. Relying on Mr. Snell's CPET test results, Dr. Ackerley also opined that, due to poor oxygen consumption, Plaintiff could not consistently do anything more strenuous than sit quietly and was incapable of even a "low stress" job. AR 1874, 1877-78. She estimated that Plaintiff could occasionally lift up to ten pounds, walk ten to twenty minutes, sometimes sit for thirty to forty minutes, sometimes stand twenty minutes, and could sit, stand, and walk for a total of less than two hours in an eight-hour workday. AR 1877-78. She stated he would need four to five twenty-minute rest periods during a work day and likely would miss work four days a month. AR 1877. She also opined that Plaintiff had cognitive issues, including issues with focus, processing speed, memory, and word finding difficulties. AR 1873.

The ALJ gave no weight to Dr. Ackerley's opinions because they were inconsistent with the many normal test and physical examination results in the record. AR 31-33. For example, the ALJ found that Dr. Ackerley's opinions regarding Plaintiff's cognitive abilities were inconsistent with neurocognitive test results that found only mild difficulties with auditory processing and processing speed. AR 31 (citing AR 1175). He also concluded that Dr. Ackerley's assessment of Plaintiff's physical capabilities is also inconsistent with the voluminous other medical reports and findings discussed above in connection with Dr. Petersen's opinions. AR 32. When weighing the medical opinion evidence, the ALJ also reasonably found the state agency consultants' opinions that Plaintiff had no workplace limitations are more consistent with the medical record than Dr. Ackerley's. AR 31-32. These opinions, in combination with the inconsistency between Dr. Ackerley's assessment and the medical record (discussed above in connection with Dr. Petersen), are substantial evidence that supports the ALJ's rejection of Dr. Ackerley's extremely restrictive assessment. *Magallanes*, 881 F.2d at 751-55; *Thomas*, 278 F.3d at 957.

### C. Plaintiff's Subjective Symptom Testimony

As discussed in detail above, Plaintiff testified that he suffered from chronic body-wide pain and inflammation, including his lower back and heart, cognitive impairment, and gastrointestinal problems (which he attributed to Lyme disease) toxic mold exposure, and

chronic fatigue syndrome. Plaintiff challenges the ALJ's finding that his testimony was not fully credible. Dkt. No. 17 at 21-23. The Court finds no error.

In evaluating a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives specific, clear and convincing reasons for the rejection." *Id*. (internal quotation omitted); *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: [t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation omitted).

The ALJ provided multiple reasons for finding Plaintiff's subjective symptom testimony regarding the intensity, persistence, and limiting effects of his symptoms was not fully credible. AR 30-31. Many of the reasons the ALJ provided for discounting Plaintiff's subjective symptom testimony are based upon a lack of supporting medical evidence, which is a proper consideration when evaluating credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). For example, the ALJ noted that while Plaintiff "routinely complained of significant symptoms such as headaches; cognitive impairment; feelings of shock in his body; and a stabbing and burning pain in the neck and chest," Plaintiff's multiple physical examinations were generally normal (AR 30 (citing AR 289-290, 442, 457-58, 752, 1003-04, 1135-36, 1149, 1152, 1306, 1391, 1439-41, 1770-71)); treating

physicians from Scripps Health and U.C. Irvine Health did not find any evidence of acute illness despite extensive testing (*id.* (citing AR 1353, 1392, 1412, 1427, 1441-43)); and an electromyography and nerve conduction study found only mild left side carpal tunnel syndrome, but no significant radiculopathy or peripheral neuropathy (*id.* (citing AR 1160)). The ALJ further noted that a brain MRI did not support Plaintiff's claimed cognitive impairment (*id.* (citing AR 1271), that the findings of an abdominal ultrasound, colonoscopy, and upper endoscopy were "unremarkable," and Dr. Barnett's treatment notes did not support Plaintiff's claimed gastrointestinal problems (AR 30-31 (citing AR 524, 1218)).

The ALJ also found that Plaintiff did not attempt to alleviate his symptoms by consistently following a medically prescribed treatment (AR 30); specifically, Plaintiff did not follow his doctor's recommended treatment plan of epidural injections and home exercise (AR 31 (citing AR 1295)); and, despite multiple physicians expressing an opinion that Plaintiff's symptoms may be partly or completely psychosomatic, Plaintiff did not seek mental health treatment (AR 31 (citing 1150, 1353, 1392)). The ALJ's finding that Plaintiff did not attempt to alleviate his symptoms by following medical advice and obtaining recommended treatment is also a clear and convincing reason to uphold the ALJ's credibility finding. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating a claimant's credibility.).

Based on the foregoing, the Court finds the ALJ gave clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms.

**D. The ALJ's RFC Determination**

Plaintiff also urges reversal because he claims the ALJ's RFC determination was not supported by any medical opinion. Dkt. No. 17 at 23. The Court finds no error.

The ALJ must base his RFC determination on the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). The ALJ must consider all relevant evidence, including medical evidence, the claimant's testimony, and lay evidence. 20 C.F.R. § 404.1545(a)(3).

The ALJ properly formulated the RFC here. The ALJ considered and evaluated Plaintiff's testimony (AR 29-31) and reviewed and considered the entire medical record, including the opinions of Plaintiff's treating physicians (AR 31-33) and the state agency physicians (AR 31-32).

Plaintiff's argument that the ALJ failed to rely on any medical opinion evidence regarding Plaintiff's functional abilities is incorrect. Dkt. Nos. 17 at 23, 22 at 3-4. The ALJ balanced Dr. Petersen's opinions (i.e., that Plaintiff could sit for about thirty minutes but not more than one hour (AR 1087-88), stand for two hours (AR 1088), walk for ten minutes (*id.*), and lift or carry about thirty pounds for less than two minutes (*id.*)) against those of the two state agency physicians opinions (i.e., that Plaintiff was not limited in his ability to perform basic work activities (AR 72-74, 79-82)). By doing so, the ALJ properly formulated the RFC. *See Davis v. Berryhill,* 17-cv-01018-BAM, 2019 WL 852117, at *7 (E.D. Cal. Feb. 22, 2019) (affirming RFC determination where the ALJ reviewed and weighed all the evidence in the record, including medical treatment records, physician's opinions, and claimant's subjective complaint testimony).

## VIII. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. No. 17) and **GRANTS** Defendant's Cross-Motion for Summary Judgment (Dkt. No. 19). The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED**.

Dated:  March 30, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge